. e . Actually the court and I represent Texas state officials The state of Texas did not write a blank check that whenever class counsel filed a motion in this case seeking new injunctive relief or opposing our showing of compliance, the plaintiffs could get fees for that effort regardless of whether they prevailed, nor does section 1988 so provide. And I want to be clear at the outset that there are two theories of fee recovery here. First, plaintiffs say that section 1988 entitles them to fees as prevailing parties with respect to this work. And second, they raise what the seventh circuit in alliance called a contractual entitlement theory. They say that even if Congress did not authorize shifting of fees for this work, the state consented to it and that we consented to it in 2007 by an agreement that was memorialized in a court order and implicitly by the corrective action order here in dispute. I want to be clear that on that second theory, the relevant actor there is not the district court but the state. That's a consent-based theory that even if section 1988 doesn't apply, we agree to the fees. And so it's appropriate to examine the language that the state used in the agreement itself. And when you turn to that language, it's very similar to the language the sixth circuit had before it in the Benta B case. It starts with using present tense language to say that we do agree that the plaintiffs are entitled to recover fees for their counsel's work on the case. Compare that to Benta B where the consent decree said plaintiffs are prevailing parties for purposes of entitlement to an award of attorney's fees. And both in Benta B, the sixth circuit appropriately recognized that while that, quote, enshrined plaintiffs' prevailing party status as to the work that had been performed to date, the real question was the prevailing party status going forward where the plaintiffs' efforts were focused on defending the decree for substantial modification. And that's just what we have before us here. And I think we should also look at the specific language in paragraph one of that 2007 agreement, which is docket number 636. It starts with that present tense language that I mentioned, which is in contrast with the forward-looking language used later when that agreement addresses only the procedure. But then it goes on to describe what makes up the fees that the state was agreeing to pay. And keep in mind, this agreement is called joint motion in connection with remedial order. That's the 2007 corrective action orders. And it contains two sentences spelling out what the fees we are agreeing to entitlement to include. And the first sentence says it includes the fees that are in docket number 400. That's for the fees from 2000 to July of 2004. And then sentence three says that it includes the fees incurred after those in docket 400 through the date of the remedial order. There is no third sentence agreeing to entitlement to fees after that. And the lack of that is quite notable. Because if there had been such an agreement, there really would have been no reason for the specificity that we're seeing in sentences two and three, where we said we're agreeing to your entitlement to fees for your work performed. And that the fees include category A and include category B through the certain date. So there's no clear agreement here. Paragraph three sets forth procedures for future fee disputes. And it does talk about, it says if the parties cannot agree on a reasonable amount, and it doesn't back contemplate. I think it clearly contemplates that there may be, at least at a minimum, that there may be fees in the future that the court would award. But doesn't it also seem to imply that the only debate will be over the reasonableness of the fees and not the entitlement to them? I don't think so, viewed in context, because we have to consider what happened before and even after this, but especially before this. In every year from 1995 through 2000, when that docket 400 was entered, there were motions filed. And these are cited in plaintiff's brief at page 14, note 18. And the district court granted those annual motions for fees. And each time it did, it found that plaintiffs prevailed, quote, during this time period. And indeed, even in the cases cited, sorry, on the motions cited footnote 19 of plaintiff's briefs after this, the court was always finding, when awarding annual fees, that plaintiffs prevailed during the time period it issued. So to come more directly to your question, yes, I think paragraph three does understand that plaintiffs will seek fees for future work. And there's a good reason for that, because there are some things in the agreement that they have at least a duty to do. For example, in paragraph 278 of the consent decree, this is part of the statewide-ness portion of the consent decree, it requires us to develop statistically valid methods to perform certain studies. And then it says that plaintiffs, that those methods are subject to approval by plaintiffs. And that's a duty that the decree imposes on plaintiffs. But what's not a duty is to raise motions for further injunctive relief and oppose our showing of compliance. It's like the Seventh Circuit said in Alliance. Plaintiffs could, once we complied with the CAO and showed our compliance with the decree, plaintiffs could have walked away from this satisfied that they had performed their duty to the class, and that there was no duty in the consent decree or CAO to raise further litigation. But why isn't this different than the Alliance case? Because, and I think you said at the outset, there's this contractual basis for recovery. Then there's this separate basis for recovery just as a prevailing party and sort of that line of cases about being inextricably intertwined with the original consent decree. But here, the corrective action order that was entered in 2007, its very last paragraph, specifically contemplates that at the end of this time period, the parties will meet and try to see where they're at, see if they can agree. And if not, both parties should file a motion, which is what happened, and the state won those motions. But wasn't this contemplated as part of the corrective action order, this filing of cross-motions? And that also does seem to limit it from these cases where millions in fees are just generated by people endlessly filing things. Well, I agree that it was contemplated, but what it's not done is that it's not required. That is similar to Alliance. And just to be clear about what's at issue here, there were two motions for fees for work performed in 2012. There was an uncontested and contested motion, right? And so the contested motion is what we have before us here on appeal. That concerns the work that we have assigned to the litigating, to the court-facing activities. And that's what the Seventh Circuit Judge Wood in the Gautreaux case said, that when you have post-judgment litigation and a complex equitable proceeding, it's better viewed as largely freestanding from the underlying case. That's what the Sixth Circuit was talking about in Ben-To-Be when it was, it actually distinguished in that case between activities that were contemplated by the CAO, which it called monitoring, this is footnotes 7 and 10 of that decision, and the activities that Ben-To-Be had before it on appeal. Why isn't this contemplated by the 2007 order on which, I think you agree, the plaintiffs were a prevailing party in obtaining that in 2007, and it specifically contemplates as sort of the last stage of this entire process, the filing of these motions to essentially see if this is going to continue or come to an end? Well, Judge Costa, all that sentence does, the one that says that the parties may file their motions for further action, is it recognizes that they could do what any party can do and, in fact, what the state could do. Because it says the state may also file that motion, and we did file a motion pursuant to that paragraph. So if you read that paragraph as saying that filing a motion is something that's contemplated, it's almost nonsensical because that would suggest that we were the prevailing parties because we filed a motion as it indicated, and we prevailed in our motion. So that has to be understood as merely setting forth the procedure. If you look at that paragraph, it's concerned with timing. It gives a 90-day timeline, 120-day timeline, and then it says the court will rule. They could have always filed this motion. That is nothing new that they have obtained, and it certainly doesn't mention fees at all. And so we think it's important, though, to step back and look at the momentousness of the agreement they say we entered to in 2007, right? We agreed to pass fees. We knew what those were, and we settled those in 2007. They're saying that we wrote a blank check that any future motion they filed, or even when they opposed our motion that we filed pursuant to that paragraph, that they were entitled to fees regardless of whether they prevailed. If they prevailed, sure, but the district court, it accepted that reading, but look at what it meant. When you look at pages 6 and 7 of its order, the district court bypasses entirely our argument about the reasonableness of this work, which the Supreme Court instructed the most important factor is the degree of success obtained. That's Hensley. The district court's answer to that was, I don't have to look at the degree of success or the reasonableness of this work because you agreed they could file this motion. That just can't be right, and that is really a blank check that any motion they filed, regardless of reasonableness or success, entitles them to fees, and it completely negates this court's precedence and the Supreme Court's precedence, finding that the state, having filed its own motion and prevailed, can be entitled to fees as the prevailing party. It's a higher standard under the discretion of the district court, but the state can well itself be a prevailing party. So the theory is that we went beyond what Section 1988 would have allowed. We waived our sovereign immunity because if it's not under 1988, we have sovereign immunity. We waived our sovereign immunity, and we agreed to basically unknowable and undeterminable future fees. If that is what the court's going to find, we respectfully ask that you should at least require clear language requiring that. That's actually consistent with this court's precedence about how you can find a waiver of sovereign immunity. It requires a clear waiver. So if I—I think those are our arguments on the contractual entitlement theory. If I can then shift to the Section 1988 theory, the basic point there is that this court in Wilson, the Seventh Circuit, the Sixth Circuit, Binta Bee, Lyons, Tennessee, Gatreau have all recognized that when you have post-judgment litigation about compliance with or the need to modify a consent decree, that is a separate freestanding issue, and you have to consider prevailing party status as to that work. That's most—some of the other cases spell that out more clearly, but this court in Wilson took that approach when it looked at the Rule 60B motion to modify the consent decree and analyzed whether the plaintiff was the prevailing party with respect to that work. And then Sixth Circuit and Binta Bee and the Seventh Circuit spell out why that is. As to that work— If you're brief, and you might have already mentioned this, it says the state paid fees up until these two motions were filed, one by you, one by the plaintiffs. What type of work was that that was being—the state was agreeing to pay attorney's fees? Was that compliance or monitoring type work? Well, those were settlements, and so we didn't have to give an exact reason for it, but it is notable that this 2010 order vacating Laggan Counties was the first motion we filed where we won. We had filed a prior motion in 2008, I believe it was, on a dental CAO, and the district court denied that, and we went ahead and settled the fees. But what's—the reason why we're appealing this is that we're now— So you had not paid fees on the Laggan Counties during this period? We—I believe that we had paid fees for pre-2011 work. Let me back up. The Laggan County CAO said from September 2007 to September 2011, prepare these reports, give these statistics, prepare a corrective action plan, and submit those to the court. We did that. We paid fees for each of those years, and I'm sure the plaintiffs billed time on Laggan County for those years, doing things like reviewing the quarterly monitoring reports. Then there was a conference period. From September 2007, you had 90 days to conference, and then a further 30 days to see if you needed to get motions in, and that ended in early January of 2011. That is also part of the fees that we settled that are not at issue here. As for 2012 work, we broke up that time. We assigned about 320 hours to work on actual litigation on Laggan Counties. One representative time entry would be at docket number—record number 59257, 5.1 hours on January 20th, work on draft amended enforcement motion and exhibits. It would be things like that that we assigned to the actual litigation activities. And that's what's at issue here on this contested—contested fees motion. There was a separate uncontested motion for 600 hours of work, $240,000 in fees for 2012, that was not assigned to any litigation but other activities. It was uncontested. The district court just actually very recently gave the final approval after class notice and everything, I think last week, in a docket number 1391, and that's uncontested. The reason why we are appealing here is that this was freestanding litigation, not about the underlying merits, but about compliance with or satisfaction of a separate injunctive order. The Sixth Circuit, the Seventh Circuit, and this court have all recognized that that has to be conceptualized as a freestanding proceeding because there's no necessary future order into which that work feeds. It's unlike pre-judgment work, and it has—it's a prevailing party has to be assessed as to that work. When it is, it's clear that the state was the prevailing party and that defendants were not—I'm sorry, plaintiffs were not, and are not entitled to fees. If I could just make one final point, though, it's even if the court is inclined to disagree with us on that, we are at the minimum entitled to a remand or reversal on the issue of reasonableness, which includes that degree of success factor. The district court bypassed that on the view that we had consented to pay for any work they did. At the minimum, that is not a plausible reading of the amended order because it specifically lays out a procedure for us to dispute reasonableness. And so if the court were to desire not to address the prevailing party issue, perhaps it just wants to avoid potential for a circuit conflict, there might be a narrower way to resolve this case by ruling that the misconception of the amended order and CIOs requires at a minimum a remand for the district court to actually engage in the reasonableness analysis, including accounting for what the Hensley Supreme Court called the crucial factor of the degree of success. I'll reserve the rest of my time for rebuttal. Mr. Gerrigan? May it please the court, I'm Tim Gerrigan. I'm representing the plaintiff class in this case. First, let me just say that the background of this, I think, what's important to remember is they are trying to dismantle this case, dismantle this litigation by denying attorney's fees. It's well understood, and has been since 1988 was entered, that for there to be enforcement of civil rights, there has to be a provision for paying attorney's fees. It's necessary. When people prevail, and people bring civil rights cases all the time. They win some, they lose some. They get paid, the plaintiff's lawyers, when they win. They don't get paid when they lose. I understand that. Typically, that's the measure at the threshold step under Hensley, but that's not what we have here. Here, as the district court found, the defendants agreed to this procedure in the corrective action order. The court ordered it. It provides for the conference process at the end of the corrective action order. It's the conference process that is supposed to mark the possibility of ending the corrective action order in that section of the decree. That's not happening anymore. The defendants show up at the conference, and they basically say, end it. That's it. In this case, in the Laggan County's issue, we asked, how did you address the objectives of the decree? They couldn't answer that. We asked them to explain how their corrective actions were supposed to improve the Laggan County situations. When they themselves admitted that the corrective actions they decided to take, and they had the discretion to take whatever corrective actions they wanted to, the ones they chose to take they knew were meaningless, were ineffective. We thought we had good reason. This goes to the reasonableness argument. We had good reason to contest whether or not they had complied with the Laggan County's objectives and whether further action was necessary to reach those objectives. They would not discuss that with us. They chose not to take advantage of that conference process. Period. That was not our choice. That was their choice. Let's go back even further. Do you contend that you're a prevailing party for all future events that occur in litigation under the COA? No. That's a misrepresentation. Do you agree that at some point there's a departure from what the COA contemplates and authorizes, putting aside the 1988? You agree that there is at some point a departure between what the authority is for an award of fees? Yes. Yes. And that's a misstatement of our position. Nobody here is suggesting, we're not arguing, that the plaintiffs are entitled to lifelong attorney's fees for all further actions, whatever we can think of. Certainly we don't suggest that frivolous actions on our part should be compensated. What we agreed to and what they agreed to was if we didn't think, if we didn't agree with them that they had satisfied the objectives of the decree and we didn't agree that no we were obligated to ask for further action. That's what we were obligated to do. That's what we agreed to do. But would the authorization for fees kick in if you were successful in returning to the court or what instance if you were not successful, let's say in your belief you've honestly thought that the state was not doing what they were supposed to do and you file something with the court and the court says, no, we think they're fine in that instance? Well, I think at that point, if that's the way we're going to look at it, if we're going to go look and see whether plaintiffs were successful on each one of these motions, you're going to be seeing a lot of us in this case because there's a lot we don't agree on. The test, I think, the proper test for that under your recent decision, and I believe it was Warner, an en banc court, I believe at least Judge Costin, Judge Dennis, you were both there, the reasonableness of our actions should depend on what it looked like at the time we took those actions. Their entire argument depends on a retrospective view. Were they successful or not, period? That's generally not the law in statutory attorney fee cases. As you said in Warner, it's certainly not the law anymore in the bankruptcy context, and the bankruptcy courts were basically following the practice in civil rights cases and other attorney fee statute cases. It should be viewed prospectively at the time we took the action, and if you look at the, not to go too far astray, if you look at the . . . Well, yeah, it didn't turn out so well for the plaintiffs, but they had good reason back when they filed, if you look at it from that perspective. He just seemed to say, I don't even have to engage in reasonableness because his view was there'd been an agreement to pay for any fees related to this. So I read it. Tell me if I'm wrong. Well, there . . . I don't think you're correct. I'm suggesting we recognize there is a line that has to be drawn somewhere. We don't think this case presents it. Here, we specifically negotiated for and obtained this process, the conference process at the end of the corrective action order, and where both parties were likely to be filing contested motions. What if you'd filed something before this period where it contemplated that, and you lost . . . you just had the states being difficult, were tired of their roadblocks. So even though you didn't wait as long as the procedures in the corrective action order say, and then you lost that, would you be able to get fees for something like that? I think there are at least arguments if we sought contempt outside of this process and were unsuccessful, the court would have to consider that under a different situation. You know, that's not something specifically anticipated here. On the other hand, the decree does provide for us to bring to the court's attention issues of noncompliance. And my guess is that at that point, a reasonable analysis, prospectively . . . you know, a prospect of reasonable analysis probably would apply. But that, like I say, that's not what we have here. Here, we've got, you know, this further action provision that was specifically agreed to. We had good reason for bringing it. And, you know, if we look at the panel's decision on statewideness, it represents a sea change in . . . or potentially represents a sea change, I should say, in the law governing injunctions and decrees. The court there explicitly disregarded the trial court's past treatment of concepts such as effectiveness, which the parties relied on when they negotiated the corrective action orders. But suddenly, all that prior treatment was disregarded. The court also sidestepped, I should say . . . I mean, it's the only case I've seen where the defendants did not have to address the objectives of the decree. The panel is coming down. And they have entered new law saying, essentially, that every decree, every provision, has to have a sunset provision. It has to have an objective, fixed, readily determinable sunset provision. That has never been the case before. Now, I know courts have preferred those. But the fact is, when parties sit down and agree to consent decrees, they're often not able to reach agreement on that. And as a result, more general terms are used, and it's up to the court to interpret them. There's a lot of different theories that are sort of lurking out here about how you might be able to obtain fees. It seems to me the district court relied on, I guess, what the state's counsel is calling the contractual theory, that there was an agreement that they would pay fees, is my reading of what the district court said. Yes. You say in your brief, you say there's no language limiting plaintiff's prevailing party status to the time period covered, no reservations of a right by the state to dispute payment of future fees.  I mean, it seems to me it's your burden to have that be somewhere in the contract. So where in any of these agreements is the language in which they didn't just agree there'd be a process set up for litigating fees, but agreed that you'd be entitled to fees for future work after 2007? I believe it's in the first paragraph. The two, you know, I read that as being the first sentence and the last sentence of the first paragraph cover the entire order, govern, well, the paragraph covers the entire order. The first and last sentences are specifically limited to past fees. But the rest of that paragraph covers all fees. But if that were a contract and you had different paragraphs of a contract, I mean, you typically read the language in each paragraph to relate to that, the issue in that paragraph. And as you say, the first paragraph is talking about time up through a particular motion through the date of the court's entry of its remedial order. It's like you're saying the issue comes down to whether those statements refer to everything or just that time. I think the first paragraph, you've got to parse it out by sentence. It does not say this paragraph only governs past fees, which the second paragraph does say. It does not say this paragraph doesn't cover future fees. It doesn't say it's not time specific at all.  And I think the first and last sentences, you know, do limit themselves. The middle of that paragraph covers all attorney's fees. That's the way the district court read it. And that's another thing. The district court, you know, read this agreement as conferring prevailing party status on us, at least for the purposes of the corrective action order. Defendants come in with, I think, what's a quite creative and fanciful interpretation that has no real authority. They read it differently than the district court read, essentially, the district court's own order. Surely the district court is entitled to considerable deference on that. And certainly it depends on the, you know, the context of the case. Was it in a different judge who actually was there and who entered? I guess not the 07 order, the original consent decree. Tell me which judges entered which, because I think the law says you get that deference maybe only if it's the judge who entered the agreement. Well, Judge Schell did not enter the corrective action order or this document 660. But he is the one who has lived with the case, I believe, since 2009. It says what it says. Another thing in the context of contract theories, the defendants completely changed their treatment of attorney's fees after that order was entered. They paid prior fees, interim fees, along the way. But they always strenuously did not concede prevailing party status. They strenuously, you know, reserved their right to contest any future fees. Suddenly, after document 660, that drops out of their practice. After that document, the agreement in 660, they routinely paid the attorney's fees without any sort of reservation. It's because they had agreed that the plaintiffs were prevailing parties. Had you lost a motion before this one with the lagging counties? No, no. The plaintiffs had been entirely successful until this order. The fact that they're paying fees when you're successful, I mean, that's, I guess I'm not sure how significant that is. They finally won something and that's where they're saying you're no longer a prevailing party. Well, that's going to, I'm afraid that's one of the things that's going to come up. Now they are claiming that we're not entitled to fees for any of our monitoring activities. They have, back to my first point, they are attempting to leverage the attorney fee issue into determining the outcome and the existence of this entire case. They have refused to agree to any fees, period, since this has been entered. As much as clear in the introductory portion of their brief in this case, they want to end the litigation by cutting off fees. Our clients negotiated for this role for their counsel and they won that. Under the basic framework for attorney's fees, attorney's fees are necessary if the plaintiffs are to be represented in these cases. The defendants agreed to this role for plaintiff's counsel. There was no requirement that it be successful or not successful. In fact, the ultimate goal in any case like this is supposed to be for the defendants to satisfy the objectives of the decree and then it goes away. Does that mean if they really started, I'm not contending they have, but if they really started trying to and achieving the objectives of the decree, does that mean we no longer get plaintiff's counsel even though they have these obligations? Don't get paid. It can't mean that. They knew when they agreed to this role for plaintiff's counsel that that was essential to the agreements and that it would require that plaintiff's counsel be compensated. What is the role of plaintiff's counsel? Excuse me?  We've got, in each corrective action order, we have different obligations. In the Lagon County's case, we basically were relegated to reading the quarterly reports and we could comment on, but we couldn't have any say in what they chose to be corrective actions. And we could make it known if we agreed or disagreed with their corrective actions, and we generally told them, we don't think you're doing enough. And they eventually admitted that they weren't doing anything they thought was effective. And then we also have the right to seek further action in order to come into compliance with the decree. That's our role as far as Lagon County. Some of the other corrective action orders have more involvement by plaintiff's counsel, but probably what's even more significant is those monitoring functions in the Fifth Circuit are traditionally compensable. The other cases relied on by the defendants, Alliance, Binnabee, you know, there were other parties appointed to do the monitoring. That's not the case here. That's on our shoulders. Thank you. Thank you, sir. Mr. Barker? Yes, thank you. I'll admit it's all in rebuttal. Mr. Garrigan argued that deference is due to the district court's view of our agreement in 2007. On the consent theory, that's not true. We cited at page one of our brief the cases showing that prevailing party status is reviewed de novo. And if this is the consent theory here, in other words, it goes beyond section 1988, then the authority to award these fees turns on what we consented to. That's the language in the agreement. This is just a contract interpretation dispute. The district court had no special insight into what we meant by our words. And he points out that it was a different judge who approved that order, which is true. Of course, it's also worth noting that three judges on the Sixth Circuit reviewing very similar language understood that it did not cover future fees. So, again, there's just no deference here. It's just interpreting the language of the agreement with respect to its text and its context, considering the magnitude of what it is they say we agreed to. Mr. Garrigan's arguments about the objectives of the degree and what we allegedly admitted weren't working, we strongly disagree with all that. But that's not at issue here. They did not appeal from the district court's order, finding that we had satisfied the Lyon County CAO. The court is concerned that there might not be any basis for him to think that Plano's work was unreasonable. It really need only look at the district court's order vacating the Lyon County CAO. He gives all of three pages attention to their argument that there's further action needed, and most of that is laying out the argument and saying, no, they're arguing that we need to do things that the consent decree and CAO never require. At the very least, we're entitled to remand on that. Mr. Garrigan argued about policy and the need for these fees to promote civil rights litigations. Of course, Congress makes the judgment about when fee shifting needs to be appropriate. And as Justice Brennan pointed out in his concurrence in Hensley, Congress's choice was rewarding only successful litigation, not, quote, allowing fees for anyone who litigated a bona fide claim in good faith. Mr. Garrigan pointed out as to another issue that parties are often not able to reach agreement on things in consent decrees. That's true as well as the fees. We didn't reach any agreement as to future fees. We just left ourselves where we found ourselves in light of the background law of Section 1988. If they brought one of these motions and prevailed, they would be entitled to reasonable fees. That's not what's happened here. Mr. Garrigan pointed out that we have paid past fees, which is true. We have settled past fees. But in that respect, this case is no different, the United States v. Tennessee, the Sixth Circuit case there. The defendants had paid fees for 18 years, but they objected in the 19th year when the plaintiffs filed a failed contempt motion. That's pretty much where we're at here. It's also worth noting that the original consent decree contained no provision addressing fees. In 2007, we reached the agreement that for future fees, it would be this conferencing period and timing period for debating reasonableness of future fees. And that's why you see in each year after 2007, when the district court is approving our settlement fees, it's always finding that plaintiffs prevailed, quote, during the time period at issue here. That's in the district court's orders on the motions noted in Plaintiff's Brief Note 19. ROA 23, I won't read the record numbers. It's dockets number 708, 739, 812, 991, and 1011. That's entirely consistent with the position that we're asserting here. Plaintiffs say that the final sentence of Paragraph 3 about the procedure, I'm sorry, the final sentence of the CAO about the procedure after the conference period ends somehow concerns fees, which is just not right. There's no mention of fees anywhere in there. In fact, that paragraph, the final sentence of the CAO says that either party may file a motion. If that were meant to – if that were somehow encompassing fees, that would mean that if the state filed a motion as it did here and we lost, that we could still come and say, well, the CAO contemplated that we could file a motion as we could even if the CAO didn't say this, and so we're the prevailing party and we get fees. No, we're the prevailing party because we won, not just because the CAO contemplated that either party may file a motion. There is no agreement to pay fees here. That means that the fee entitlement issue falls back to Section 1988. If the companions bring a post-judgment litigation motion for further action or resist our motions and win, they are entitled to fees. They have to be reasonable, of course. They did not. They're not a prevailing party. So all of this argument about assessing reasonableness at the time and not in hindsight is not responsive to our lead argument, at least, which is they haven't crossed that threshold of being the prevailing party within the sense contemplated by Section 1988. Therefore, we respectfully ask that the court reverse the district court's order and remand for rejection of plaintiff's contested motion for 2012 fees. Thank you, sir.